J-S33034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHEED JOHNSON | : | |
| | : | |
| Appellant | : | No. 2236 EDA 2024 |

Appeal from the PCRA Order Entered July 29, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007811-2017

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED NOVEMBER 12, 2025**

Rasheed Johnson ("Johnson") appeals pro se from the order entered in the Philadelphia County Court of Common Pleas denying his first, timely petition for relief under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We adopted the trial court's factual history in our decision affirming Johnson's judgment of sentence.  ***See Commonwealth v. Johnson***, 266 A.3d 657, 2021 WL 4958881, at *1-2 (Pa. Super. 2021) (non-precedential decision).  We summarize the points relevant to Johnson's PCRA claims.

Johnson was convicted of, among other crimes, raping, kidnapping, and robbing C.B. on December 31, 2016.  C.B. was working that afternoon in the Germantown neighborhood of Philadelphia as an Amazon delivery driver.  At

_____

[1]  42 Pa.C.S. §§ 9541-9546.

approximately 4:24 p.m., C.B. entered her vehicle after completing a delivery. Johnson then opened her passenger-side door and entered the vehicle. C.B., believing that Johnson made a mistake, told him to leave. Johnson instead pulled out a gun, shoved it towards her body, and directed her to drive. Johnson called out directions and demanded C.B.'s debit card. C.B. told Johnson that she did not have a card or much cash on her. Johnson then directed C.B. to an alley and ordered her to open some of the packages. Dissatisfied with the contents, Johnson "then forced the gun to C.B.'s backside and told her to take off her pants. A struggle ensued and [Johnson] digitally penetrated her vagina, then he put on a condom and vaginally raped her[.]" Trial Court Opinion, 11/16/2020, at 2.

Following the rape, Johnson told C.B. to put on her clothes and directed her to a certain intersection. On the way, Johnson took C.B.'s wallet and photographed her driver's license with his cell phone. Before exiting the vehicle, Johnson told C.B. that he would visit her house if she called the police.

C.B. immediately reported the crimes and detectives recovered Johnson's fingerprints from the vehicle's exterior. C.B. identified Johnson from a photo array and authorities arrested Johnson about a month later, seizing a cell phone from Johnson's person. Investigators obtained cell tower data and determined that the phone was in the area at the time of C.B.'s rape. Additionally, authorities executed a search warrant for the phone and found the photograph of C.B.'s license, as well as photographs of Johnson holding a

gun, taken three days after the rape. Finally, Johnson's internet search history revealed that he searched for "rape-related" phrases approximately two hours after the rape as well as the previous day.[2]

Johnson testified and told the jury that he was selling drugs when C.B. approached and asked for a Percocet. As the two negotiated a price, Johnson touched her vehicle. Johnson claimed that C.B. did not have enough cash and tried to exchange things from her trunk for the drugs. Johnson denied performing any rape-related internet searches and testified that several of his fellow drug dealers had access to his phone.[3] He also explained that he took the photograph of C.B.'s identification with her consent to prove she was not a police officer. Finally, Johnson told the jury that he made rap videos and the guns were props.

Following Johnson's jury trial and convictions, the trial court sentenced him to an aggregate period of forty-six to ninety-two years in prison. As previously stated, we affirmed that judgment of sentence on direct appeal.

---

[2] The parties agreed to use this phrase to eliminate the prejudicial effect of many of the actual search terms, which included "Many boys rape a teen girl on a motorbike," "Fully naked female, ass tied up, raped and left in a field/a full crime scene footage," "full autopsy of murdered woman that was raped," and "I wanna rape." PCRA Court Opinion, 1/10/2025, at 20 n.3.

[3] Johnson was on parole and had absconded from a halfway house.

Johnson thereafter filed a timely PCRA petition,[4] and court-appointed counsel sought to withdraw in accordance with **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc). The PCRA court issued its notice of its intent to dismiss the petition without an evidentiary hearing, and ultimately dismissed the petition after Johnson failed to respond. Johnson filed a timely notice of appeal, and the PCRA court issued an opinion addressing the pro se claims without requiring a Rule 1925(b) statement. We now review the five issues Johnson presents for our consideration:

1. Did the PCRA [c]ourt err in denying PCRA relief without an evidentiary hearing where [t]rial [c]ounsel failed to object to the prosecutor's misconduct during its summation?

2. Did the PCRA [c]ourt err in denying PCRA relief without an evidentiary hearing where [a]ppellate counsel failed to appeal the trial court's advocacy for the prosecution in its admission of the gun photos?

3. Did the PCRA [c]ourt err in denying relief where counsel failed to litigate the inadmissibility of the gun photos under the "similar weapon" exception?

4. Did the PCRA [c]ourt err in denying relief without an evidentiary hearing where counsel failed to object, based on

_____

[4] Johnson sought review with our Supreme Court, which denied his petition on June 8, 2022. **Commonwealth v. Johnson**, 279 A.3d 1183 (Pa. 2022). He did not seek review with the United States Supreme Court and his judgment of sentence thus became final ninety days later. **See** U.S.Sup.Ct. R. 13; 42 Pa.C.S. § 9545(b)(3) ("a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania or at the expiration of time for seeking the review"). The *pro se* petition was filed on July 10, 2023, and is therefore timely.

authenticity of the evidence, to the admissibility of certain iinternet [sic] searches from a cell phone?

5. Did the PCRA [c]ourt err in denying relief without an evidentiary hearing where [Johnson] alleged legitimate newly discovered evidence of an alibi witness?

Johnson's Brief at 2-3.

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

*Commonwealth v. Wilson*, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted).

A PCRA court may dismiss a petition without a hearing where "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings[.]" Pa.R.Crim.P. 907(a)(1). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Williams* 313 A.3d 249, 253 (Pa. Super. 2024) (citation and quotation marks omitted).

**Ineffective Assistance of Counsel**

- 5 -

The first four issues challenge Johnson's attorneys' stewardship. In addressing these claims, "we observe first that counsel is presumed effective and that a petitioner bears the burden to prove otherwise." *Commonwealth v. Hamilton*, 303 A.3d 823, 830-31 (Pa. Super. 2023) (citation omitted). To rebut this presumption, Johnson must plead and prove three prongs: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice … with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014) (citation omitted). We may address the prongs in any order, as the failure to establish any precludes relief. *Id.*

Prosecutor's Summation

Johnson's first claim concerns the assistant district attorney's comment during closing argument, "I don't believe anything [Johnson] said about the drug transaction. That never happened." N.T., 10/22/2019, at 53. Johnson argues that trial counsel ineffectively failed to object.[5]

A prosecutor "has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009). This latitude encompasses

---

[5] Johnson does not specifically state that trial counsel should have also requested a mistrial, but we construe his claim as incorporating that point since he claims that he was entitled to a new trial had the issue been preserved and raised on direct appeal.

the ability to comment on the credibility of the witnesses, but the prosecutor commits misconduct by expressing a personal opinion on the credibility of the defendant or other witnesses. *See Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005). An evaluation of a prosecutorial misconduct claim "requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Judy*, 978 A.2d at 1019.

While we agree that the prosecutor improperly expressed a personal opinion on Johnson's credibility, we nonetheless conclude that the ineffectiveness claim lacks arguable merit. In *Commonwealth v. Johnson*, 588 A.2d 1303, 1303 (Pa. 1991), our Supreme Court held that Johnson failed to establish arguable merit where trial counsel failed to object to the prosecutor's "characterization of [Johnson] as a liar" during closing argument. Like this case, *Johnson* involved a credibility conflict, as "[t]he victim and [Johnson] were the only two who testified" regarding the events. *Id.* at 1307. The Court explained that cases in which the appellate courts awarded a new trial for a prosecutor expressing an opinion of a witness tend to involve situations where "there was no basis whatsoever for the prosecutor's remarks" that a witness lied. *Id.* at 1306. In contrast, the "jury was acutely aware that the victim's and [Johnson]'s stories conflicted." *Id.* at 1307.

> Indeed, defense counsel quite clearly indicated his belief that one of the prosecution witnesses was in fact lying. The prosecutor then responded to this attack on one of the Commonwealth's witnesses. Given these circumstances, it would be difficult to conceive of any other approach when closing to the jury than that employed by the prosecutor here. Viewed in this context, the prosecutor's comments were neither unfair nor prejudicial, but,

merely reinforced the fact that the jury had been presented
conflicting stories. Because appellant's claim lacks merit, we
cannot find counsel ineffective for failing to object to these
remarks.

*Id.*

Thus, there is no arguable merit to the claim that the comments justified a request for a mistrial. Like counsel in *Johnson*, Johnson's attorney argued that C.B. lied on the stand. Defense counsel pointed to pieces of evidence suggesting that the case was not proven beyond a reasonable doubt, such as the absence of fingerprints from the vehicle's interior. However, counsel added, "there are many instances of [C.B.]'s story that don't make sense, that raise a flag." N.T., 10/22/2019, at 44. Counsel further made a point to the jury that Johnson opted to take the stand and that his testimony was believable: "He didn't try to say he was a good guy. He got up; this is what I do. I am on the street and this woman came up to me." *Id.* at 48. In context, trial counsel accused C.B. of lying.

We do not fault trial counsel's advocacy or suggest that it was improper. Johnson's testimony presented a version of events where either he or C.B. lied to the jury, and counsel argued on behalf of his client. The Commonwealth was entitled to respond in kind. Thus, it was inevitable that the closing arguments would focus on the credibility of the competing accounts. Therefore, we conclude that "the comments made in the instant case were not prejudicial given the atmosphere of the entire trial[.]" *Johnson*, 588 A.2d at

1307. As a result, there is no arguable merit to the claim trial counsel was ineffective for failing to object or requesting a mistrial.

Questions of C.B. Regarding the Gun

Johnson's second claim challenges direct appeal counsel's stewardship regarding the lead up to the trial court's decision to admit the photograph taken on January 3, 2017, depicting him with a firearm.[6] Johnson's Brief at 12-19. According to Johnson, counsel should have "appeal[ed] the trial court's advocacy for the prosecution in its admission of the gun photos." *Id.* at 12.

The following background is relevant to this claim. The first jury trial ended in a mistrial. The Commonwealth had sought a pretrial ruling authorizing the admission of photographs showing Johnson holding a gun. The trial court barred the photographs from the Commonwealth's case-in-chief but left open the possibility they would be admissible on rebuttal. Because of the mistrial, the case did not reach the rebuttal stage. Upon retrial, the matter was reassigned to the current PCRA judge, the Honorable Anne Marie B. Coyle, who allowed the Commonwealth to admit the photographs in its case-in-chief if C.B.'s testimony lay a sufficient foundation.[7]

_____

[6] The trial court did not permit the Commonwealth to introduce the other two photographs, which were taken on January 23, 2017.

[7] Johnson argued that the trial court erred by overruling the first trial judge's ruling that the photograph could not be admitted during the case-in-chief. We rejected that argument on appeal. *Johnson*, 2021 WL 4958881, at 3 ("[T]he grant of a new trial wipes the slate clean so that a previous court's ruling on the admissibility of evidence generally does not bind a new court upon retrial.").

- 9 -

On direct examination at this trial, C.B. testified that when Johnson entered her vehicle she "saw a gun pointed at me." N.T., 10/18/2019, at 12. When asked if she could "recall what the gun looked like," C.B. replied, "I just saw black on it." *Id.* at 15. Following cross-examination and redirect, the trial court brought the attorneys to sidebar, during which the following conversation occurred:

> THE COURT: At the beginning you all asked me about the issue with the gun, the subsequent picture. The only question I can recall thus far here is, there was one question referencing the gun, but there are constant references to seeing the gun at different intervals. I'm looking at Page 2 of C-3, which reflects a little bit more of a description.
>
> Do you wish to explore that further or no?
>
> [COMMONWEALTH]: I can ask her.
>
> THE COURT: All right. I will allow it.
>
> [COUNSEL FOR JOHNSON]: What exactly is the Commonwealth going to address? She just finished [r]edirect.
>
> THE COURT: She can open the door again.
>
> [COUNSEL FOR JOHNSON]: Judge, can I make a record?
>
> THE COURT: Sure.
>
> [COUNSEL FOR JOHNSON]: I will object to any type of questioning about the gun on [r]edirect, as its not -- I wasn't cross-examining her on the gun. It's outside the scope of [r]edirect.
>
> THE COURT: You can always -- you have the complainant on the stand. You can further [c]ross. I'm not telling you all what to do. You asked me. It's my understanding that this is still something I have to decide. I have not heard yet enough information to make a decision as to whether I will allow it or not.

N.T., 10/18/19, at 70-72.

- 10 -

The Commonwealth then asked C.B., "We spoke about what the gun looked like. You said you recalled it being black. Do you remember any other scriptors [sic] about it?" *Id.* at 72. C.B. stated, "No." *Id.* C.B. then refreshed her recollection by examining her prior statement to police. She answered, "I had said he had a dark-colored black gun." *Id.* at 74. C.B. did not offer any more details about the firearm. The trial court determined that this testimony authorized the admission of the January 3, 2017, photograph during the testimony of the witness who examined Johnson's phone.

Johnson avers that the trial court "sua sponte raised the admissibility of the photos," and inappropriately "suggested that the Commonwealth re-open its questioning of the witness to elicit more descriptors of the alleged weapon." Johnson's Brief at 15. He maintains that direct appeal counsel should have argued that the trial court's actions deprived him of a fair trial by demonstrating bias. *See* Johnson's Brief at 17 ("[A]ppellate counsel should have argued on appeal that the court acted inappropriately when it intervened and advocated on behalf of the prosecution, showing clear bias.").

The PCRA court concluded that the claim lacked arguable merit, noting that the admissibility of the photographs was the subject of pretrial motions. The court thus "held the issue of their relevance under advisement" pending testimony. PCRA Court Opinion, 1/10/25, at 13. In its view, the court "did not improperly advocate" because it "simply informed both parties outside of the jury's view that more information would be helpful to this [c]ourt's

decision[.]" *Id.* at 15. Therefore, the admissibility of the photo "was raised by counsel before trial and remained an open question" at the time. *Id.* Alternatively, the PCRA court concluded that Johnson could not establish prejudice, as the "gun photos had been admissible with or without the [c]ourt's referenced comments." *Id.*

We conclude that the PCRA court properly dismissed the claim. Direct appeal counsel cannot be ineffective for failing to raise an unpreserved claim. *See Commonwealth v. Blakeney*, 108 A.3d 739, 764 (Pa. 2014) ("[T]o the extent [Blakeney] failed to object to the unrecorded sidebars, the defaulted due process claims were unavailable to counsel on direct appeal."). The only claim available to direct appeal counsel was the specific objection leveled by trial counsel, which clearly did not suggest that the mere act of calling a sidebar signaled to the jury that "the judge knew something they didn't about [Johnson]'s guilt[.]" Johnson's Brief at 16-17. As the underlying claim was not preserved, appellate counsel cannot be ineffective for failing to raise it. *Commonwealth v. Anderson*, 327 A.3d 273, 291 (Pa. Super. 2024) ("Counsel cannot be deemed ineffective for having declined to raise a meritless claim.").

<u>Admission of Photograph</u>

Johnson's third claim challenges the admissibility of the photograph of Johnson with a gun. Johnson's Brief at 20-21. He claims that trial counsel ineffectively failed to object to its admission on the grounds that C.B.'s

testimony did not satisfy the Commonwealth's burden to lay a sufficient foundation. *Id.* We agree that the trial court erred in admitting the evidence. However, we conclude that Johnson failed to establish prejudice.

Pretrial, the Commonwealth sought to admit three photographs under Rule of Evidence 404(b). Evidence of other weapons not used in the commission of the crime in question is generally inadmissible. However, the "similar-weapon" exception permits the Commonwealth to introduce evidence that the defendant possessed a weapon provided it can "lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." *Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (citation and quotation marks omitted). The *Christine* Court disapproved cases "affirm[ing] use of this exception strictly on the basis of similarity, without an inference they were the weapons used[.]" *Id.* at 401. Simultaneously, the High Court recognized that "[a]ny uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Id.* at 400 (quotation marks and citation omitted).

Johnson argues that C.B.'s testimony failed to meet the Commonwealth's burden. The PCRA court concluded that it properly admitted the photo since any uncertainty regarding the weapon went to the weight to be accorded to that evidence.

In *Christine*, the Commonwealth prosecuted the defendant for attacking his fellow inmate, Thomas Missero, with a razor blade. Officers

recovered a shank from Christine's cell, which the Commonwealth admitted did not cause Missero's injuries. The trial court permitted the Commonwealth to admit the shank under the "similar-weapon" exception. Our Supreme Court held that this was an abuse of discretion. "The theory of the exception is that the weapon possessed could have been the weapon used—that simply is not the case here, and admission under the similar-weapon exception was error." **Id.** at 400–01.

Thus, **Christine** did not address a case like this one, where the weapon the defendant possessed could be the actual weapon used. Recently, our Supreme Court evenly split on the question of whether the Commonwealth must lay an evidentiary foundation that the "similar weapon" it seeks to introduce was the actual weapon used. In **Commonwealth v. Holt**, 273 A.3d 514 (Pa. 2022), the defendant shot and killed Officer Brian Shaw with a .40 caliber firearm during a traffic stop. The Commonwealth introduced evidence that, approximately two weeks before the shooting, Michael Luffey saw Holt carrying a .40 caliber firearm. Separately, Luffey observed a firearm in the waistline of Holt's pants within a few weeks of the murder.

Three Justices concluded that the first observation satisfied the exception but the second did not. As to the first, Justice Donohue, joined by then-Chief Justice Baer and now-Chief Justice Todd, explained:

> Luffey testified that he was familiar with firearms, and that based on his familiarity with firearms, he believed the firearm Holt possessed to be a .40 caliber black firearm. The Commonwealth presented evidence demonstrating that the murder weapon in this case was a .40 caliber firearm. Through this evidence, the

> Commonwealth laid a proper foundation to justify an inference by the jury that when Luffey observed Holt in possession of a .40 caliber weapon at their dining room table weeks before the shooting, he observed Holt with the same weapon used in the commission of the offense. This evidence was relevant to demonstrate Holt's access to and familiarity with a .40 caliber firearm, and thus, his opportunity to commit the murder. Holt's attempts to attack Luffey's testimony to suggest that he did not observe the "actual weapon used in the crime" are the type of arguments that go to the weight of the evidence, and not its admissibility.

*Id.* at 539 (OAJC) (citations to transcript omitted).

Regarding the second occasion, Luffey "testified that on some unspecified day he viewed Holt carrying a firearm in his waistband." *Id.* He said this weapon did not appear to be the same .40 caliber from the other occasion. "Because the Commonwealth introduced no other evidence supporting an inference that this was the weapon used in the commission of the crime, we find that the court erred in admitting that evidence." *Id.*

Justice Dougherty, joined by Justices Mundy and Brobson, agreed that the trial court properly applied the "similar-weapon" exception to the first occasion. The concurring Justices disagreed with the analysis employed by the lead opinion "to the extent it concludes 'the Commonwealth must lay a foundation to justify an inference that the weapon was the actual weapon used.'" *Id.* at 552 (Dougherty, J., concurring) (citation omitted). The concurring Justices opined that this "overstates the requirement of the similar-weapon exception," as the "exception does not … require a stricter inference the weapon introduced was the **actual** weapon used." *Id.* (emphasis in

original).[8]  The concurrence did not opine on the admissibility of the second occasion but agreed that any error was harmless beyond a reasonable doubt.

We conclude that the trial court erred in admitting the evidence.  C.B.'s testimony established only that her assailant carried a black firearm.  It does not appear from the testimony that C.B. examined the photographs that the Commonwealth introduced.  If this testimony were sufficient to satisfy the exception, then Pennsylvania would be aligned with the majority of jurisdictions on this issue.  As the OAJC in *Holt* explained, "Pennsylvania courts, unlike those in other jurisdictions, require the prosecution to make some connection between the weapon defendant previously possessed and the crime at issue to justify the 'similar-weapons exception.'"  *Id.* at 536 (OAJC) (footnote omitted).  By way of comparison, the Court cited *People v. Fierer*, 529 N.E.2d 972, 979 (Ill. 1988*).*  The *Fierer* Court stated, "[w]here there is evidence that the defendant used a particular type of weapon and a similar weapon is found, the jury may reasonably infer that it was the one used to commit the offense."  *Id.*  C.B.'s testimony satisfied that standard, but not our heightened one.  While the *Holt* case indicates there is an open question as to the degree to which the Commonwealth must show the "similar

_____

[8]  The OAJC responded in a footnote that its opinion did "not affirm the admission of the evidence based on an assessment of how strong the inference was; instead, we merely hold that under the facts of the case … the Commonwealth satisfied its burden regarding that first occasion." *Id.* at 539 n.18 (OAJC).

weapon" was the **actual** weapon used, which here would mean evidence that the firearm in the photograph was the same one C.B. saw pointed at her, all Justices agreed that at minimum the Commonwealth must show that the weapon in the photograph "could have been the weapon used[.]" **Holt**, 273 A.3d at 552 (Dougherty, J., concurring). C.B.'s testimony merely established that Johnson possessed a firearm and did not offer any basis to conclude that the photograph depicted the actual weapon used.[9] We therefore conclude that the trial court erred in admitting the photographs.

However, Johnson has failed to establish that this error caused prejudice, baldly arguing in his brief that "the photos likely made a huge difference to the jury." Johnson's Brief at 19. Boilerplate allegations do not satisfy the petitioner's burden. **See Commonwealth v. Paddy**, 15 A.3d 431, 443 (Pa. 2011) ("We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.").

### Internet Search History

Turning to Johnson's fourth issue, he contends that trial counsel ineffectively failed to challenge the authenticity of the internet search history

---

[9] The concurring Justices in **Holt** did not address whether the trial court properly admitted the testimony that the witness saw "a firearm in the waistline" of Holt's pants. **Holt**, 273 A.3d at 539 (OAJC). C.B.'s testimony is, in our view, substantively similar to that testimony.

evidence presented to the jury. Johnson's Brief at 22-27. We first summarize the relevant testimony.

Jobal Thomas, employed by the Pennsylvania State Police as an agent at the time of these crimes, testified as a digital forensic expert. Agent Thomas used specialized software to search the phone recovered from Johnson. Using the agreed-upon sanitized language, Agent Thomas "identified some rape-related pornographic Google searches" performed by the phone's user and ascertained the timestamps for those searches. N.T., 10/21/2019, at 94. Agent Thomas testified that those searches were "timestamped 9:52:15 a.m. on December 30th, 2016, goes to 9:58, 10:02 a.m., [and] 15:15:20, which is 10:47[.]" *Id.* at 95. The phone user had also searched for "Real rapes caught on camera" using Google on December 31, 2016, at 6:42 p.m. and 6:44 p.m. *Id.* Additionally, at 8:20 p.m. that same evening, the user searched for "Attempted rape caught on security camera in Park Slope." *Id.* He testified that on January 3, 2017, the user searched Google for these phrases: "Comcast Philly's Most Wanted," "Philly's Most Wanted" and "Philadelphia's Most Wanted." *Id.* at 96. Finally, on January 8, 2017, the user performed several searches for law enforcement information, including "Rasheed Malik Johnson Fugitive," "U.S. Marshals Service Fugitive investigator index," and "Are you wanted by U.S. Marshals.com." *Id.*

Johnson denied performing the internet searches for the rape-related terms. He conceded, however, that he had searched for his own name on most wanted lists, as he "was on the run from a halfway house." *Id.* at 15-

- 18 -

16. He explained that his "phone actually had been passed off" by 6:00 p.m. on December 31, 2016, as he "ran a couple errands for the pot, as we call it, for everybody that we sell drugs together with." *Id.* at 31.

Johnson did not object to the admission of the internet search history evidence. He claims that trial counsel ineffectively failed to raise an authentication challenge to these search results, pointing out that anyone using the phone could have performed the searches.

There is no challenge to the reliability of the Commonwealth's forensic evidence, i.e., there is no dispute that the phone which Johnson possessed on the day of his arrest actually searched for those terms at the specified dates and times. Additionally, it is not disputed that Johnson possessed the phone on December 31, 2016, as he agreed that he used his cell phone to take the picture of C.B.'s license. In other words, Johnson accepts that the Commonwealth established **someone** used that same phone and its browser to search Google for those phrases. His claim implicates authorship, meaning the sufficiency of the evidence to show that Johnson was that "someone."

By rule, the Commonwealth had to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This requirement "generally entails a relatively low burden of proof[.]" ***Commonwealth v. Bowens***, 265 A.3d 730, 759 (Pa. Super. 2021) (en banc) (citation omitted). We review evidentiary decisions for an abuse of discretion. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1090 (Pa. 2017).

As a threshold matter, the PCRA court opined that Rule 901(b)(11), which applies to "[d]igital [e]vidence," may or may not govern as the Rule defines digital evidence as "a communication, statement, or image existing in an electronic medium." PCRA Court Opinion, 1/10/2025, at 21. The PCRA court determined that "the evidence is more likely to be governed by Rule 902, which relates to [e]vidence which is [s]elf-[a]uthenticating." *Id.* We decline to address that issue, as Rule 901(b)(11) was made effective on October 1, 2020, and thus did not apply to this trial. **Commonwealth v. Orr**, 255 A.3d 589, 601 n.3 (Pa. Super. 2021) ("Although this new rule appears to be consistent with [case law], we will refrain from applying it herein, since trial took place in this case several years before the rule's effective date.").

That said, we accept arguendo that the analysis applied to text messages governs here.[10] We have previously recognized that cell phones "are not always exclusively used by the person to whom the phone number is assigned." **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa. Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014). Thus, the fact that a given phone number sent a text message does not itself authenticate

_____

[10] The PCRA court's observation that the definition of "digital evidence" would not cover this material is well taken. Indeed, other jurisdictions have opined that internet search history records are not analogous to text messages because they do not have an expressive component. **See, e.g., State v. Sander**, 682 S.W.3d 85, 100 (Mo. App. 2023) ("Unlike text messages, which contain expressive content that may suggest a message was written by one or another person, internet searches, and internet browsing history, contain fewer distinguishing characteristics."). In fairness to Johnson, we opt to apply the stricter authentication standard set forth under Rule 901 as we conclude that the internet search history was authenticated under that framework.

the message since another person could have authored the message.  **Id.** ("[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person.  Circumstantial evidence, which tends to corroborate the identity of the sender, is required.").

Applying that logic here, the mere fact that the cell phone Johnson possessed on the day of his arrest searched for the rape-related terms does not establish that he was the "author" of those search terms.  We have further held, however, that the use of an electronic device at or near the relevant time is strong circumstantial evidence of authorship in text messaging cases. ***See, e.g., Commonwealth v. Nabried***, 327 A.3d 315, 323 (Pa. Super. 2024).  In **Nabried**, the appellant raised an authentication challenge to text messages concerning drug sales sent from his phone to a confidential informant.  **Id.** at 322-23.  We concluded that the messages were authenticated, as Nabried called the informant back in a manner consistent with the text messages.  **Id.** at 323.  Thus, the evidence showing Nabried possessed the cell phone and used it to place a phone call around the relevant time was strong circumstantial evidence that he also authored the text messages around those same times.  **Id.**

In the case at bar, the evidence unequivocally showed that the phone in question had rape-related searches conducted approximately two hours after the rape.  Johnson agreed that he used his phone to take a picture of C.B.'s license, and thus he possessed the device very close in time to when

- 21 -

the rape-related searches occurred. As in *Nabried*, while it is possible someone else gained access to Johnson's phone and performed those searches, we conclude that possibility goes to the weight to be given the evidence and not its admissibility. The fact that Johnson possessed the cell phone within two hours of the searches sufficiently established that Johnson was the author of those searches.

It follows from this conclusion that the rape-related searches performed the day before were likewise authenticated. In text message cases, we have cited the content of the messages to demonstrate authorship. *See, e.g., Commonwealth v. Orr*, 255 A.3d 589 (Pa. Super. 2021). In *Orr*, the defendant conceded sending text messages to the murder victim on the night of her murder but denied sending multiple threatening text messages a month prior. He argued that someone else may have sent those messages. We concluded that the messages were properly authenticated. We explained that Orr's claim "hinges on the idea that … someone else both had access to [Orr]'s phone and would have reason to send those specific messages." *Id.* at 601. We determined that the "record does not support this speculative notion." *Id*.

Similarly, the fact that Johnson possessed the phone at a time rape-related searches were made is circumstantial evidence that he also performed the other searches. Johnson's argument requires that someone other than him gained access to his phone within two hours of C.B.'s rape, and then that same person, or perhaps a completely different individual, also used the phone to perform rape-related searches on December 30, 2016. The record does

not support this speculative notion. Indeed, aside from Johnson's own testimony, there is very little evidence that anyone other than Johnson used the cell phone.[11] Because the Commonwealth "is not required to prove that no one else could be the author," we conclude that the search history was sufficiently authenticated. *See* Pa.R.E. 901, cmt. Accordingly, we agree that the PCRA court did not err in denying this claim without an evidentiary hearing.

**After-Discovered Evidence**

Johnson's final claim involves the discovery during PCRA proceedings of two additional witnesses. In his pro se PCRA petition, Johnson alleged that "as [he] was preparing to file this petition, he learned that his niece, Anjanae Williams [("Williams")], had made contact with a woman who was actually with Johnson at the time of the alleged incident." PCRA Petition, 7/10/2023, at 25. Williams "made contact with Taleta Davis [("Taleta")], a friend of Johnson's who was present with him when the alleged victim attempted to purchase drugs from Johnson." *Id.* Johnson attached an affidavit from Taleta, wherein she stated "a white woman pulled up trying to buy pills. I remember [Johnson] asked her if she was a cop. … [H]e was only at her car for [one to two] minutes before he came back to the sidewalk[.]" *See id.*, Exhibit 3.

---

[11] Johnson's brief cites testimony from the first jury trial for the proposition that "[t]here were as many as [fifteen] different user accounts on the phone[.]" Johnson's Brief at 23 (citing N.T., 12/3/18, at 13). Because the PCRA court declined to hold an evidentiary hearing on his petition, we will accept for purposes of our resolution of this claim that there was evidence tending to establish someone other than Johnson had access to the phone.

Taleta then reached out to Tachelle Davis, who submitted an affidavit stating that Johnson and Taleta came to her house for a New Year's Eve party.

To receive a new trial based upon after-discovered evidence, Johnson must prove the following four prongs:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

***Commonwealth v. Rivera***, 939 A.2d 355, 359 (Pa. Super. 2007).

The PCRA court rejected the claim because Johnson failed to establish the first and fourth prongs. Beginning with diligence, the PCRA court noted that Johnson "does not allege or demonstrate that he told anybody, including his trial attorney, of the existence of this witness, or that any attempts had been made to establish contact with [Taleta] prior to the conclusion of his trial." PCRA Court Opinion, 1/10/2025, at 22. Second, the PCRA court concluded that the testimony would not have likely altered the outcome, as Johnson's testimony did not indicate the presence of any third party who could have corroborated his version of events.

We agree with the PCRA court's analysis of the first prong. Johnson's brief does not address the PCRA court's analysis and instead largely repeats the claims advanced in his pro se petition. He argues he was duly diligent for these reasons:

> [Johnson] was incarcerated the entire time prior to trial because he could not post bail. He spent most of the time in the Restricted

- 24 -

> Housing Unit … in Philadelphia County Prison and did not have access to the telephone or emails or texts to try to get family or friends to locate Taleta Davis. The police had confiscated [Johnson]'s phone and he did not have her phone number or contact information memorized, so he had no way of kowing [sic] any way to reach out to her. There was no possible way for [Johnson] to have obtained this information sooner.

Johnson's Brief at 29-30.

"The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable relationship." ***Commonwealth v. Padillas***, 997 A.2d 356, 364 (Pa. Super. 2010) (citation omitted). We agree that Johnson's failure to allege that he even told his attorney about Taleta is particularly pertinent. A defense attorney has the duty to conduct investigations, and "[i]t can be unreasonable *per se* to conduct no investigation into known witnesses." ***Commonwealth v. Pander***, 100 A.3d 626, 638–39 (Pa. Super. 2014) (en banc) (citation omitted). Thus, had Johnson told his attorney that a third party could corroborate his story, or alleged trial counsel ineffectively failed to consult with Johnson about that aspect of his case, he may have had a viable ineffectiveness claim. ***Cf. Commonwealth v. Carpenter***, 725 A.2d 154, 163 (Pa. 1999) ("Although captioned as an 'after-discovered evidence' claim, what [Carpenter] actually argues is ineffectiveness of his trial counsel."). We will not permit Johnson "to sandbag the fairness of the trial by withholding or failing to seek out material, probative evidence and then collaterally attacking his conviction." ***Padillas***, 997 A.2d at 364 (quotation marks and citation

omitted). He failed to make reasonable efforts to locate Taleta, who was obviously known to him.

As to the other witness, the PCRA court concluded that Johnson cannot establish that this testimony would have made any difference, as she would testify that Johnson "attended a party at [her] house at a time many hours after the incident was alleged to have occurred." PCRA Court Opinion, 1/10/2025, at 24. We agree that this testimony sheds no light on the version of events testified to by either C.B. or Johnson and thus would not have had any impact on the outcome of the case.

None of the issues raised by Johnson entitles him to relief. We therefore affirm the decision of the PCRA court to dismiss his petition without a hearing.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025